IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 07-20509-CIV-COOKE/BROWN

-----------------------------------------------------------------x
OSCAR MANES and
ALEJANDRO FERNANDEZ

    Plaintiffs,

vs.

SETAI SOUTH BEACH, LLC,

    Defendant.

-----------------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR SUMMARY FINAL JUDGMENT**

Defendant, THE SETAI SOUTH BEACH, LLC ("The Setai"), through its undersigned counsel and pursuant to Fed. R. Civ. P. 56 and Local Rules 7.1 and 7.5, files its Memorandum of Law in Support of its Motion for Summary Final Judgment, as follows:

**PRELIMINARY STATEMENT**

In this action, Plaintiffs, food servers at The Setai, claim that The Setai violated the minimum wage requirements by paying them a reduced hourly rate for activities that they describe as "non-tipped work," and for sponsoring an invalid tip-pool. Two Plaintiffs, Oscar Manes ("Manes") and Santiago Calles ("Calles"), also claim that their termination from their employment with The Setai was in retaliation for their involvement in this action.

The record evidence establishes that none of Plaintiffs' claims have merit, and that summary final judgment should be entered in favor of The Setai. The undisputed facts establish that The Setai was not required to modify its the direct wages paid to Plaintiffs for the work at issue, and even if it was required to do so, any shortfall between the direct wages paid

and the applicable minimum wage were more than satisfied by the service charges Plaintiffs received. Further the undisputed evidence shows that The Setai had legitimate business reasons for terminating the employment of Manes and Calles. Accordingly, The Setai is entitled to summary final judgment as a matter of law.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). An issue of fact is "material" if it is a legal element of a claim under the applicable substantive law and one which might affect the outcome of the suit under the governing law. See Anderson, 477 U.S. at 248. A material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. The moving party may discharge its burden by showing that there is an "absence of evidence to support the non-moving party's case." Mora v. Univ. of Miami, 15 F. Supp. 2d 1324, 1331 (S.D. Fla. 1998) (citations omitted), aff'd, 189 F.3d 485 (11th Cir. 1999).

In order to defeat a defendant's properly supported motion for summary judgment, the plaintiff must make an affirmative presentation of specific facts showing a genuine issue, and may not merely rely on the general allegations of the pleadings. See id. A mere scintilla of evidence is insufficient to defeat a motion for summary judgment:

> [I]n every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could

>properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

Anderson, 477 U.S. at 251 (citations omitted).

Further, a plaintiff must make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322-23. The failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. Id.

### POINT I

### PLAINTIFFS' MINIMUM WAGE CLAIMS FAIL BECAUSE THEIR COMPENSATION INCLUDED REGULAR HOURLY WAGES AND SERVICE CHARGES EQUAL TO, OR IN EXCESS OF, THE APPLICABLE MINIMUM WAGE

Federal and state law require employers to pay employees a legally-prescribed minimum hourly wage. Current federal law sets the minimum at $5.85 per hour,[1] while Florida law sets the minimum at $6.67 per hour.[2] See 29 U.S.C. § 206(a)(1); Section 24, Article X of the State Constitution; Fla. Stat. § 448.110. Provided certain conditions are satisfied, however, an employer may pay tipped employees[3] an hourly rate less than the federal or state minimum wage, by allowing them to credit a portion of the actual amount of tips received by the employee against the required minimum hourly wage.

Section 203(m) provides in relevant part:

---

[1]  This rate became effective July 24, 2007.

[2]  Florida's minimum wage law became effective May 2, 2005. At that time, the applicable rate was $6.15 per hour. The rate increased to $6.40 per hour for calendar year 2006, and increased to $6.67 for calendar year 2007. See Fla. Stat. § 448.110 (4).

[3]  A 'tipped employee" is an employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips. 29 U.S.C. §203(t). Plaintiffs do not dispute that they qualify as tipped employees.

3

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title. The additional amount on account of tips may not exceed the value of tips actually received by an employee.

An employer is eligible for this "tip credit" if (1) the employer has informed the tipped employee of the statutory requirements related to the tip credit; and (2) all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips. 29 U.S.C. § 203(m). Florida law similarly allows employers to take a tip credit. See Fla. Const. art. X, § 24(c).

Both federal and state law establish a maximum amount that employers relying on the tip credit may deduct from the hourly statutory minimum. In Florida, an employer must pay "tipped employees" a direct wage in an amount equal to the current minimum wage of $6.67 minus $3.02, which, as required by Florida's Constitution, is the 2003 tip credit existing under the FLSA. Put another way, Florida employers must pay tipped employees a direct hourly wage of at least $3.65 as of January 1, 2007. If the tip credit is inapplicable or the employer fails to satisfy the tip credit requirements, then the employer is obligated to pay the full statutory minimum amount in cash wages.

In the instant case, Plaintiffs contend that The Setai is not entitled to the benefit of the tip-credit provision because they were required to share their tips with the morning servers (who contributed less money to the tip-pool), and with servers who at times ironed tablecloths in

The Restaurant – an activity Plaintiffs describe as "non-tipped" work. SOF ¶¶ 3, 7, 10. Plaintiffs also claim that The Setai should have taken no tip credit and paid them the full minimum wage in direct wages for time spent in their own "non-tipped" activities, including weekly wine training and time spent studying for work-related tests. Id. ¶ 10. Plaintiffs allege that The Setai's practices in this regard violated the minimum wage laws and entitle them to recover the difference between the reduced hourly rate paid to them and the applicable minimum wage. The Setai disagrees.

In pursuing these claims, Plaintiffs fail to appreciate that the service charges at issue in this case are <u>not</u> "tips" for purposes of the FLSA, and <u>may</u> be used to satisfy the monetary requirements of the minimum wage laws. In addition, so long as the compensation they received from regular hourly wages and service charges equals or exceeds the applicable minimum wage, there is no violation of the Act. That is exactly the case here.

Chapter 29 of the Code of Federal Regulations draws a critical distinction between "tips" and "service charges." <u>See</u> 29 C.F.R. §§ 531.52 – 55. Section 531.52, entitled "Payments which constitute tips," provides:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity. In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer. Only tips actually received by an employee as money belonging to him which he may use as he chooses free of any control by the employer, may be counted in determining whether he is a "tipped employee" within the meaning of the Act and in applying the provisions of section 3(m) which govern wage credits for tips.

29 C.F.R. § 531.52.

> Section 531.55, entitled "Examples of amounts not received as tips," states:
>
> (a)   A service charge for service, such as 10 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to his employees, cannot be counted as a tip received in applying the provisions of section 3(m) and 3(t).  Similarly, where negotiations between a hotel and a customer for banquet facilities include amounts for distribution to employees of the hotel, the amounts so distributed are not counted as tips received.  Likewise, where the employment agreement is such that amounts presented by customers as tips belong to the employer and must be credited or turned over to him, the employee is in effect collecting for his employer additional income from the operations of the latter's establishment.  Even though such amounts are not collected by imposition of any compulsory charge on the customer, plainly the employee is not receiving tips within the meaning of section 3(m) and 3(t).  The amounts received from customers are the employer's property, not his, and do not constitute tip income to the employee.
>
> (b)   As stated above, service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the Act.  However, where such sums are distributed by the employer to his employees, **they may be used in their entirety to satisfy the monetary requirements of the Act.**  Also, if pursuant to an employment agreement the tips received by an employee must be credited or turned over to the employer, such sums may, after receipt by the employer, be used by the employer to satisfy the monetary requirements of the Act.  In such instances, there is no applicability of the 50-percent limitation on tip credits provided by section 3(m). (emphasis added).

29 C.F.R. § 531.55.

The U.S. Department of Labor, Wage and Hour Division, has consistently found that service charges received by servers and other tipped employees are creditable towards the employer's minimum wage obligations.  See 1968 DOLWLH LEXIS 14 (Jan. 17, 1968) (service charges received by waiters and bartenders constitute straight time pay and may be used in meeting the minimum wage requirements of the law); 1975 DOLWH LEXIS 6 (Jan. 15, 1975) (service charges imposed on customers is valid method of paying wages to waiters, even if

6

waiters also receive additional tips from customers); 1976 DOLWH LEXIS 13 (Mar. 26, 1976) (service charges paid to service employees are not tips); 1981 DOLWH LEXIS 43 (Apr. 16, 1981 (service charges paid to tipped employees at restaurant are commissions, not tips); 1985 DOLWH LEXIS 44 (Feb. 8, 1985) (compulsory service charges added to customers' bills are not considered tips and may be used by the employer in any way he or she chooses, including using the service charges to pay employees); 1985 DOLWH LEXIS 63 (June 21, 1985) (same); 1987 DOLWH 27 (Sept. 14, 1987) (same); 1988 DOLWH LEXIS 27 (Sept.13, 1988) (service charges may be used to pay employees, even if employer does not specify to guests that the service charge will be passed on to its employees); 1997 DOLWH LEXIS 37 (Aug.29, 1997) (service charge not tips, and tip credit rules do not apply, even if service charge is discretionary with customer, where customer not advised he may reduce or eliminate the charge); 1999 DOLWH LEXIS 77 (July 12, 1999) (employer has complete discretion in choosing manner in which the compulsory charge is to be used, which would include using it to pay employees).

Similarly, the DOL Field Operations Handbook provides:

> 30d03 <u>Service charges.</u>  A compulsory service charge (generally noted on the menu) which is added to a customer's bill is not part of the server's (waiters/waitresses) tip income but, rather, is included with the employer's gross receipts.  Therefore, the employer has complete discretion in choosing the manner in which the compulsory service charge is used, which would include using it to pay servers and/or server helpers (busboys/busgirls).

U.S. Department of Labor, Field Operations Handbook 30d03 (1993).

Plaintiffs have not explicitly challenged in this case The Setai's use of the service charges as a credit towards its minimum wage obligations, and the undisputed facts show that such a claim would be unavailing because there is nothing about the 18% service charge that is characteristic of "tips" within the meaning of 29 C.F.R. § 531.52.  The record evidence

7

establishes that customers at The Restaurant have no discretion to determine whether the service charge is to be paid or to set the amount, which are the linchpins of a "tip" under the Act. SOF ¶ 5. For example, Plaintiffs testified that the 18% service charge is automatically imposed on guests, and otherwise compulsory in nature. Id. Plaintiffs also admit that neither they nor the guests had the discretion to reduce or modify the charges, and that only management had the authority to reduce the service charge in the event of poor customer service. Id. Additionally, Plaintiffs concede that reductions to the service charges were, at most, infrequent. Id. These same undisputed facts, in addition to the fact that The Setai segregates the service charges in its POS system and pays state sales tax on that income, all fit squarely within the contours of 29 C.F.R. § 531.55 – "Examples of amounts not received as tips." SOF ¶ 6. Because the service charges at issue do not qualify as "tip" income under the FLSA, The Setai is free to use those charges to satisfy its minimum wage obligations in this case.

It is further undisputed that the cash wages and service charges paid to Plaintiffs far exceeded the federal and state minimum wage requirements. An analysis of Plaintiffs payroll records establishes that the service charges alone were more than sufficient to cover the applicable minimum wage. SOF ¶ 8. When the service charges (identified on the Plaintiffs' paystubs as "Setai Restaurant" or "Service Charges") are divided by the hours worked, it becomes very clear that Plaintiffs received far more than the applicable wage based on the service charges alone!  Even Manes, without referring to these records during his deposition, testified that servers work between 45 to 60 hours a week during the busy season, and typically receive between $1,000 to $1,350 per week after taxes. Id. This, of course, is no surprise because The Restaurant is a four star, fine dining establishment known for its quality service and celebrity clientele. Id. ¶ 1. The average customer bill for dinner is approximately $150.00,

8

which equates to an average service charge of $27.00 per person. Id.  In fact, the significant service charges generated by its steady customer base (much of which is repeat business, SOF ¶ 1) and the potential for high earnings make The Setai one of the most desirable places in South Florida for a server to work.  In either event, the undisputed facts of this case conclusively demonstrate that Plaintiffs cannot establish a minimum wage violation against The Setai as a matter of law.

## POINT II
### EVEN IF PLAINTIFFS ARE DEEMED "TIPPED" EMPLOYEES, THEY ARE NOT ENTITLED TO FULL MINIMUM WAGE IN DIRECT WAGES FOR TIME SPENT PERFORMING ANCILLARY ACTIVITIES

Even if the facts supported the proposition that the service charges at issue were characteristic of "tips," Plaintiffs' claims still would fail because their contention that The Setai was required to pay them the full minimum wage in cash for time spent ironing tablecloths, studying for server-related tests, and attending weekly wine training is misplaced as Plaintiffs were not employed in a "dual job."

The federal regulations provide that an employee who is employed in a dual job, only one of which he qualifies as a tipped employee, may not be paid under the tip-credit method for the time spent in the non-tipped job. See 29 C.F.R. § 531.56.

Section 531.56(e) provides:

> Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least [$30] a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation as maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and

9

> occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e).

In the instant case, Plaintiffs have confused the concept of non-tipped "job" with non-tipped "work." Plaintiffs do not contend that they worked in dual jobs at The Setai, and the evidence establishes that they were employed exclusively as servers during the relevant time. Further, Plaintiffs have pointed to no authority that states they must be paid the full minimum wage in direct wages if they engage in ancillary activities that do not result in direct and immediate tips.

Section 531.56(e) acknowledges that restaurant servers generally will be required to perform duties that, although they may not directly or immediately result in tips from customers (such as cleaning and setting tables, washing dishes, and the like), are part and parcel of a server's job and, as such, do not require that they be paid other than as a tipped employee. Plaintiffs take no issue with the fact that they were paid a reduced cash wage for time spent taking out linen, cleaning the coffee station, refilling sugar caddies, etc. SOF ¶ 10. Plaintiffs also take no issue with the payment of a reduced direct wage for the 30-minute pre-shift meetings before The Restaurant opened for dinner. Id. Yet Plaintiffs contend, without any legal basis, that "ironing" linen for the tables and attending meetings/classes to enhance their knowledge in wine, food and service procedures at The Setai is somehow different than those other functions, and should not have been paid at a reduced wage. Ironically, the complained of duties are more directly linked to tips than the unchallenged side duties in this case because the server's enhanced knowledge of wines and food consistency (and something other than a

wrinkled tablecloth) generally would result in better service and would yield greater tips. As a result, Plaintiffs cannot establish that The Setai violated either federal or state minimum wage requirements by paying them as tipped employees for the time spent engaging in the job functions at issue. Accordingly, as a matter of law summary judgment should be entered in The Setai's favor on Plaintiffs' minimum wage claims as alleged in Counts I-II.[4]

## POINT III

**PLAINTIFFS MANES AND CALLES CANNOT ESTABLISH A RETALIATION CLAIM UNDER THE FACTS OF THIS CASE**

### A. Prima Facie Case for Retaliation Pursuant to the FLSA

Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

In order to establish a prima facie claim of retaliation under the FLSA, Plaintiffs Manes and Calles must prove: (1) that they engaged in an activity protected by the FLSA (2) that they suffered adverse action by the employer subsequent to or contemporaneously with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action. See Wolf v. Coca Cola Co., 200 F.3d 1337, 1342-43 (11th Cir. 2000); Whitten v. City of Easley, 62 Fed. Appx. 477, 480 (4th Cir. 2003) (citing Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1394 (10th Cir. 1997)). If an employee establishes a prima facie claim of retaliation, the employer must proffer a legitimate, non-retaliatory reason

---

[4]    Thus, Plaintiffs are not entitled to an accounting as alleged in Count III.

for the adverse action. Wolf, 200 F.3d at 1342-43; Whitten, 62 Fed. Appx. at 480. Because the Defendant need only produce, not prove, a non-retaliatory reason, this burden is "exceedingly light." See Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 (11th Cir. 1983). Once the employer has proffered a legitimate reason for its employment actions, the presumption against the employer is rebutted, and the plaintiff must come forward with evidence that the reasons are pretextual. Wolf, 200 F.3d at 1342-43; Whitten, 62 Fed. Appx. at 480. Plaintiff may accomplish this "by showing that the employer's proffered explanation is unworthy of credence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.' In other words, 'it is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.'" Reeves, 530 U.S. at 146-7 (2000) (internal citations omitted).

### 1. Manes and Calles Cannot Establish a Causal Connection

In the instant case, neither Manes nor Calles cannot establish the third element of their prima facie case, i.e., that there is a causal connection between their involvement in this action and their termination. Plaintiffs have proffered no direct evidence to support their retaliation claims, and apparently rely solely on the fact that their terminations occurred after this action was filed. This "timing," without more, does not satisfy their obligation to establish the necessary connection between these two events.

It is well settled that an employee cannot establish the necessary "causal connection" for a prima facie case by relying solely on a short time period between the protected act and the alleged adverse employment action. Wascura v. City of S. Miami, 257 F.3d 1238,

1247 (11th Cir. 2001); accord Balletti v. Sun-Sentinel Co., 909 F. Supp. 1539 (S.D. Fla. 1995). Indeed, the mere existence of a protected activity followed by an adverse employment action is insufficient to establish a causal connection. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 745 (11th Cir. 1996). Further, action taken more than three months after the alleged protected activity generally has been deemed by the courts to be too remote in time to infer a connection between the two events. See Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004) (three-month gap insufficiently close to make out prima facie case of retaliation); Vandesande v. Miami-Dade County, 2006 U.S. Dist. LEXIS 29855 at *23-24 (S.D. Fla. April 7, 2006) (three month gap insufficiently close to make out a prima facie case of retaliation).

In the instant case, the record reveals that approximately four months expired between the time of Manes' initiation of this action and his termination. Manes filed suit on January 9, 2007 [D.E. 1], and was terminated in May 2007. SOF ¶¶ 11, 15-17. And, of course, the incident leading to Manes' termination occurred after he already gave The Setai notice of his intent to resign – effective May 17, 2007.[5] Id. ¶¶ 15-18.

Further, even if the facts were different and Manes could establish close temporal proximity between the two events, his claim still would fail because his involvement in the altercation with Calles was a superseding event which broke the chain between the protected activity at issue and his termination. See Hankins v. Airtran Airways, 237 Fed. Appx. 513, 522 (11th Cir. 2007) (intervening act of misconduct, i.e. yelling at a co-worker and stating that plaintiff would "kick his ass," severed any causal connection between complaint of unlawful treatment and termination just 20 days later); Spence v. Panasonic Copier Co., 46 F. Supp. 2d

---

[5] Despite the fact that he would be quitting his employment in any event on May 17, 2007, Manes initiated a claim for unemployment compensation and withheld that information from the Unemployment Compensation Division. Manes Depo, p. 91.

1340, 1348 (N.D. Ala. 1999), aff'd, 204 F.3d 1122 (11th Cir. 1999) (holding that "while a short lapse of time might raise an inference of discrimination, such an inference does not arise when intervening factors are established"). See also Knickerbocker v. City of Stockton, 81 F. 3d 907 (9th Cir. 1996) (although adverse action following close on heels of protected activity under FLSA can support inference of retaliation, such inference is not compelled where other evidence provides reasonable basis for inferring that adverse action was not retaliatory); Robinson v. AFA Serv. Corp., 870 F. Supp. 1077, 1084 (N.D. Ga. 1994) (no causal link despite termination one day after employer learned of discrimination charge).  Here, Manes' involvement in the altercation on May 3, 2007 is an intervening factor which negates any inference of retaliation based upon the timing of his termination.

Similarly, Calles cannot rely on timing alone to establish his prima facie case retaliation.  Calles filed his opt-in notice in this case on May 10, 2007. [D.E. 10]  By then, the altercation that led to his termination had already occurred.  Indeed, the evidence shows that the altercation occurred on May 3, 2007, one week before he filed his notice of consent to join the lawsuit.  SOF ¶ 16.  The facts also establish that the wheels of discipline already were in motion before his consent form was filed because he and Manes were suspended on May 4, 2007, pending the results of an internal investigation.[6]  Id. at ¶ 17.  Manes and Calles then were terminated on May 11, 2007, after the investigation substantiated the allegations of wrongdoing. Id. ¶¶ 17-18.  Based on these undisputed facts, neither Manes nor Calles can establish a prima facie case of retaliation in this matter.

---

[6] Manes and Calles do not allege that their suspension was retaliatory. See Am. Compl. ¶¶ 30-33.

B.     **Defendant Had Legitimate, Non-Retaliatory Reasons for Terminating Manes and Calles**

Even if Manes and Calles were able to state a prima facie case of unlawful retaliation, any inference of retaliation is quickly dispelled because The Setai has offered a legitimate, non-retaliatory reason for its decision to terminate them. The law is clear that poor performance and unacceptable behavior are legitimate, non-retaliatory reasons for disciplinary action. See EEOC v. Kloster Cruise Ltd., 897 F. Supp. 1422, 1428 (S.D. Fla. 1995) (holding poor work performance is a legitimate reason for discharge); Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999) (holding poor work performance and yelling vulgarities in front of customers were legitimate reasons for discharge). See also Nix v. WLCY Radio/Rahall Comm., 738 F.2d 1181, 1187 (11th Cir. 1984) (holding an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").

The undisputed record shows that The Setai's employee conduct and workplace anti-violence policies clearly delineate that fighting, use of threatening, obscene or abusive language or harassment of guests or other staff members through verbal or physical conduct is prohibited and that a breach of this prohibition can result in disciplinary action, up to and including termination. SOF ¶ 12. Both Manes and Calles acknowledged that they were aware of these policies and the consequences of violating these policies. SOF ¶¶ 12, 14. Nevertheless, Manes and Calles engaged in an altercation on May 3, 2007. Id. at ¶¶ 16-17. Defendant conducted an investigation of the incident, which revealed that the two were throwing sauces and wine at each other and broke a plate and glasses. Id. at ¶ 17. Based on this behavior, and consistent with its policies and past practices, The Setai terminated their employment. Id. at ¶¶ 17-18.

### C. Manes and Calles Cannot Establish That The Setai's Reasons Are Pretextual

Given Defendant's legitimate, non-retaliatory reason for their terminations, Manes and Calles "must show 'that the reasons proffered [by the employer] . . . were false and that the real reason was retaliation.'" Hankins, 237 Fed. Appx. at 522 (quoting Sullivan v. AMTRAK, 170 F.3d 1056, 1061 (11th Cir. 1999)).  See also Reeves, 530 U.S. at 146-7.  Manes and Calles must do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Id. (quoting Carter v. City of Miami, 870 F.2d 578, 584 (11th Cir. 1989).  See also Reeves, 530 U.S. at 146-7.

Defendant anticipates that Manes and Calles will claim that the incident on May 3, 2007 was not an altercation but something more akin to a "misunderstanding."  However, such a claim would not under the facts of this case establish that The Setai's justification for their terminations was pretextual.  Nothing in Florida jurisprudence requires that an employer extract a confession from an employee before taking appropriate disciplinary action.  Indeed, an employer need only establish that it had an honest belief that the infraction occurred, even it the belief is erroneous.  See  Hankins, 237 Fed. Appx. at 522.  See also Rojas v. State of Fla., 285 F.3d 1339, 1342 (11th Cir. 2002) (the proper inquiry is not "whether the [employer's] conclusion is a correct one, but whether it is an honest one"); Cooper v. Southern Co., 390 F.3d 695, 740 (11th Cir. 2004) ("the relevant issue here is not whether [the employee] actually falsified the entry, but rather whether [the employer] honestly believed [the employee] falsified the entry).

The facts of this case establish that, even if the Court were to accept Plaintiffs' claim that the incident was a misunderstanding, The Setai honestly believed a physical altercation occurred.  SOF ¶¶ 17-18.  The Setai did not immediately terminate Manes and Calles

16

on May 3, 2007, as one might assume it would do if it were motivated to fire them for their involvement in this case, but rather followed its custom of launching an internal investigation into the matter. Id. The investigation substantiated the altercation and, based on that, Manes and Calles were terminated. Id. at ¶¶ 17-19.

Further, the record evidence reveals that the terminations were not an aberration. To the contrary, The Setai has terminated the employment of at least four other employees for engaging in physical altercations, and none of those four had filed claims against the Setai prior to their terminations. SOF ¶ 20. This anecdotal evidence establishes that Manes and Calles' terminations were unrelated to their prosecution of their minimum wage claims in this case. In fact, of the 15 servers involved in this action, six remain employed by The Setai, and six others remained employed until they voluntarily quit their employment. Id. at ¶ 11. Further, Plaintiff Fernandez admitted under oath that he suffered no negative or retaliatory action for his involvement in the case. Id. at ¶ 19. Thus, the indisputable and uncontroverted evidence establishes that the terminations of Manes and Calles were for something other than their involvement in this case, namely, their misconduct on May 3, 2007. Accordingly, The Setai is entitled to summary judgment on the retaliation claims in this action.

## CONCLUSION

Based on the undisputed record evidence, the Setai is entitled to summary judgment on all claims in this action.

WHEREFORE, Defendant, THE SETAI SOUTH BEACH, LLC. respectfully requests that the Court grant summary final judgment in this case and award all other relief the Court deems appropriate, including an award of fees and costs associated with its defense of this baseless action.

Dated:  December 17, 2007
       Miami, FL

                              Respectfully submitted,

By:  s/Patrick G. DeBlasio, III
      Patrick G. DeBlasio, III, Esq.
      Florida Bar No. (871737)
      Email: *deblasip@jacksonlewis.com*
      Jennifer L. Poole, Esq. (0608661)
      E-mail: *poolej@jacksonlewis.com*
      JACKSON LEWIS LLP
      One Biscayne Tower, Suite 3500
      2 South Biscayne Boulevard
      Miami, Florida 33131
      Telephone:  (305) 577-7600
      Facsimile:   (305) 373-4466
      Attorneys for Defendant

**CERTIFICATE OF SERVICE**

It is hereby certified that on the 17TH of December 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

          By:  s/Patrick G. DeBlasio
               Patrick G. DeBlasio, III, Esq.

## SERVICE LIST

### OSCAR MANES VS. SETAI SOUTH BEACH, LLC
### CASE NO. 07-20509-CIV-COOKE/BROWN

Lawrence J. McGuiness, Esq.
Florida Bar No.: 814611
Lawrence J. McGuiness, P.A.
5805 Blue Lagoon Drive, Suite 145
Miami, FL 33126
Tel.: 305-264-5611
Fax: 305-264-5617
Attorneys for Plaintiffs

Patrick G. DeBlasio, III, Esq.
Florida Bar No. 871737
E-mail: *deblasip@jacksonlewis.com*
Jennifer L. Poole, Esq.
Florida Bar No. 0608661
E-mail: *poolej@jacksonlewis.com*
JACKSON LEWIS LLP
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
Attorneys for Defendant
Setai South Beach, LLC